**FILED**

**April 25, 2022**

released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

No. 20-0792 – *Auto Club v. Jessica A. Moser*

Armstead, Justice, dissenting:

I write separately in this matter because I believe the majority has misinterpreted the term "incurred" in the insurance contract at issue in this case and such interpretation may result in serious implications on the recovery of damages in this State. Because I further believe that the majority's decision opens the potential for windfall damages and double recoveries, I respectfully dissent.

Here, Ms. Moser operated a car owned by Joshua Jandreau. Mr. Jandreau was insured by an insurance policy issued by Auto Club. While operating Mr. Jandreau's car, Ms. Moser was involved in an accident where she suffered bodily injury. The insurance policy included a Medical Payments Coverage ("MPC") with a policy limit of $5,000. She submitted a bill from Rankin Physical Therapy for $2,165 (the original billed amount) to Auto Club for payment under the MPC. Auto Club denied payment and stated that *no balance was owed*, and the "policy does not allow duplication of benefits." Another denial letter was sent, and Auto Club stated that since the bill was paid for in full by Medicaid, Ms. Moser never "incurred" the bill. Ms. Moser then filed this action. Granting Ms. Moser's motion for summary judgment, the circuit court found in favor of Ms. Moser and allowed her to recover damages that *she never incurred*. Ms. Moser never paid for any amount of her physical therapy—the bill was written off, in part, and the remaining amount

was paid by Medicaid. As such, Ms. Moser was awarded money that was both (1) paid for already; and/or (2) written off by Rankin Physical Therapy and *not paid for by anyone*.

The MPC provision in the insurance policy provides that Auto Club "will pay reasonable medical expenses incurred for necessary medical and funeral services because of bodily injury[.]" The word "incurred" is not defined in the policy, and this lawsuit arose because of the parties' dispute as to the meaning of this term. The majority opinion simply finds that the term "incurred" is clear and unambiguous. In fact, the majority opinion states that "[t]he typical consumer would understand that a medical expense is incurred at the time the services are rendered." I disagree. First of all, the term is not defined in the insurance policy and is far from clear and unambiguous. Secondly, because both parties put forth compelling arguments supporting their respective positions as to the definition of "incurred." I believe that this debate is evidence of the term's ambiguity.

To support its position that Ms. Moser deserved to be compensated, the majority cites a general dictionary definition of "incur" as "to become liable or subject to," ignoring the fact that Ms. Moser never ultimately became "subject to" having to pay the charges. Under the majority's interpretation, "incurred" would include the total bill for the medical treatment of the insured rather than the bill for which the insured is directly and legally liable. In sum, the majority adopts a definition of "incurred" so broad that it does not matter whether Ms. Moser was liable for the medical bill or not.

2

I view this case differently. First of all, it is clear that the charges a patient ultimately becomes responsible to pay often vary substantially from those charges that were noted at the time a patient is treated. For example, the patient usually receives an explanation of benefits which shows the original amount billed. Then, the insurance company and the provider will usually negotiate, and write off a portion of the bill. Next, the insurance company pays for portion of the remaining amount—often times, the insurance company will pay for most, or all, of the remaining bill. Finally, the patient is held responsible for payment of the final amount once such amount is reduced by insurance payments and other offsets. This is precisely what occurred in this case.

As mentioned above, Ms. Moser never paid for any medical bills out of pocket—this payment was made by the insurance carrier. Because Ms. Moser never paid for her medical bills, she has already been fully compensated. The decision of the circuit court, as affirmed by the majority, affords Ms. Moser a double recovery—and this Court has long disfavored double recoveries. In fact, it is the "preeminent public policy of this state ... that the injured person be *fully compensated* for his or her *damages*[.]" *State Automobile Mut. Ins. Co. v. Youler,* 183 W.Va. at 564, 396 S.E.2d at 745 (emphasis in original). The mere fact that an insured has a variety of coverages available to compensate him or her does not increase his or her damages. It is only when, by operation of a policy provision, an insured's available coverage results in less than "full compensation" that we would need to consider awarding additional compensation.

3

Although in a slightly different context (i.e. underinsured coverage), this Court has recognized that insurers providing underinsured motorist coverage are "liable for the *excess or uncompensated* damages up to the underinsured motorist coverage limits." *Youler,* 183 W.Va. at 568, 396 S.E.2d at 749 (emphasis added). Quite simply, the damages covered by the tortfeasor's liability policy and the medical payments coverage do not constitute "uncompensated" damages. Many other courts have also concluded that uninsured and/or underinsured motorist coverage may be properly offset by medical payments to prevent a double recovery. *See Ostransky v. State Farm Ins. Co.,* 252 Neb. 833, 566 N.W.2d 399 (1997); *Mid–Century Ins. Co. of Texas v. Kidd,* 997 S.W.2d 265 (Tex.1999); *Ellison v. California State Auto. Ass'n,* 106 Nev. 601, 797 P.2d 975 (1990); *Wing,* 17 P.3d 783 (Alaska 2001); *Rowzie,* 556 F.3d 165 (4th Cir.2009) (interpreting South Carolina statute); *Welborn,* 480 F.3d 685 (5th Cir.2007) (interpreting Mississippi law); *Miera v. Dairyland Ins. Co.,* 143 F.3d 1337 (10th Cir.1998) (applying New Mexico law); *Standard Mut. Ins. Co. v. Pleasants,* 627 N.E.2d 1327 (Ind.App.1994); *Barnes v. Allstate Ins. Co.,* 608 So.2d 1045 (La.App. 1992); *Taxter v. Safeco Insurance Co. of America,* 44 Wash.App. 121, 721 P.2d 972 (1986); *Yates v. Dean,* 244 Ga.App. 333, 535 S.E.2d 335 (2000); *Kessler v. Shimp,* 181 N.C.App. 753, 640 S.E.2d 822 (2007).

In this case, interpreting "incurred" as including only damages for which the victim is *actually liable* does not undercompensate the victim or "short" them in any way.

4

Rather, this interpretation ensures "full and complete recovery" while also preventing a double recovery, which this Court has long found violative of public policy: "It is generally recognized that there can be only one recovery of damages for one wrong or injury. Double recovery of damages is not permitted; the law does not permit a double satisfaction for a single injury." Syl. Pt. 7, in part, *Harless v. First Nat'l Bank in Fairmont,* 169 W.Va. 673, 289 S.E.2d 692 (1982); *see also McDavid v. U.S.,* 213 W.Va. 592, 601, 584 S.E.2d 226, 235 (2003) (noting that it is "axiomatic" that only one recovery is permitted for each loss); *see also McCormick v. Allstate Ins. Co.,* 202 W.Va. 535, 505 S.E.2d 454 (1998); *Smithson v. United States Fid. & Guar. Co.,* 186 W.Va. 195, 411 S.E.2d 850 (1991); *Meade v. Slonaker,* 183 W.Va. 66, 394 S.E.2d 50 (1990); *Sewell v. Gregory,* 179 W.Va. 585, 588 n. 4, 371 S.E.2d 82, 85 n. 4 (1988) ("The Appellants, of course, would not be entitled to recover twice for the same damages, but may assert available alternate theories of liability"); *Wiggins v. Eastern Associated Coal Corp.,* 178 W.Va. 63, 66, 357 S.E.2d 745, 748 (1987) ("The appellant could not have been granted any additional relief under the parallel West Virginia statute because '[d]ouble recovery of damages is not permitted; the law does not permit a double satisfaction for a single injury.'" (citing Syl. Pt. 7, in part, *Harless*)).

The very purpose of MPCs is to protect the insured from having to pay out-of-pocket expenses. Ms. Moser did not have to pay uncompensated out-of-pocket expenses. Indeed, Ms. Moser was never obligated to pay amount for her physical therapy, and she willingly settled for $60,000 of the $100,000 available from the tortfeasor. To

compensate her beyond that, for bills she did not incur, would be unfair and against this State's longstanding policy of reasonable compensation.

Ultimately, based on the information put forth above, I disagree with the majority's decision, and I would reverse the circuit court's order granting summary judgment in favor of Ms. Moser. The majority's decision misinterprets the contractual term "incurred" to include charges for which Ms. Moser never became personally responsible to pay and sanctions windfalls and the double recovery of damages, which is against the longstanding public policy and longstanding posture of this State. Insurance exists to prevent victims from having to pay out of pocket expenses; however, it does not exist to award victims for being involved in accidents or to provide them with an excess of damages. For these reasons, I respectfully dissent.